EDWARD YOUSEFIAN AND ROSE YOUSEFIAN, HIS WIFE,
PLAINTIFFS, v. THE MUNICIPAL COUNCIL OF THE
TOWNSHIP OF WAYNE, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided July 5, 1977.

Mr. *Howard Stern* for plaintiff (*Stern, Steiger, Croland & Bornstein,* attorneys).

Mr. *Frank Scangarella* for defendant.

REISS, P. J. D. C., Temporarily Assigned. Plaintiffs initiated this action by means of a complaint in lieu of prerogative writs pursuant to *R.* 4:49–1. Plaintiffs are the owners of a 102-acre, vacant tract of land situated between the Paterson-Hamburg Turnpike and Colfax Road and south of Terhune Drive in the Township of Wayne. The property lies almost wholly within a Residence "A" or single-family residence zone.

On or about September 26, 1974 plaintiffs made an application to the Municipal Council of Wayne to designate the property as suitable for a Planned Unit Development (PUD). The town argues that the application is for a zone change.

Plaintiff's application was referred to the township's planning board for processing. A public hearing was held by the planning board on this matter on November 13, 1975, which was continued on December 1 and December 22, 1975. In the course of the hearings various experts and members of the public offered their testimony, some of which was favorable and some not. A conceptual site plan was submitted which reflected a density of 4.9 units an acre, or approximately 490 one-family units. At first plaintiffs offered to amend the density to 3.5 units an acre. Later, in accordance

with the recommendation of the municipal planning consultants and the township planner, the applicant offered to reduce the density further to 2.5 units an acre. The planning board approved the application at that density. On January 15, 1976 the planning board forwarded a letter to the township municipal council, recommending that the tract was suitable for PUD.

The matter came before the township council at its regular meeting on January 21, 1976, at which time a motion was passed remanding the application to the planning board for further review of the recommended density. With the applicant's agreeing to further reduce the density to 2.0 units an acre, the planning board again approved the site for PUD on April 12, 1976. However, on June 2, 1976, the council denied plaintiff's application and voted to defeat Ordinance 16 of 1976, which would have allowed it. No specific findings were offered by the council.

Plaintiffs then instituted this action in lieu of prerogative writs. Plaintiffs argue that the approval of the PUD project by the council after the recommendation by the planning board was merely a ministerial act. Therefore, they have moved for summary judgment, which is allowed in such a situation under *R*. 4:69–2. Plaintiffs seek to have the subject property declared a Residential Planned Unit Development, and further ask that the court hold certain portions of the Wayne P. U. D. ordinance invalid. Defendant township has brought a cross-motion for summary judgment, alleging that its action was a valid exercise of its discretionary, legislative authority.

## I

The Wayne Township P. U. D. ordinance, R. O. § 211–113.1 *et seq.*, was enacted pursuant to the authority granted by the Municipal Planned Unit Development Act (1967), *N. J. S. A.* 40:55–54 *et seq.* Any municipality exercising powers granted by the Municipal Planned Unit Development

Act must, in enacting an ordinance, designate the municipal authority which is empowered to exercise the powers of the municipality. *N. J. S. A.* 40:55–56(c). The municipal authority designated in this case is the township planning board. R. O. § 211–113.3.

R. O. § 211–113.4 sets forth the procedure to be followed when an application for a PUD is made.

(1) As a condition precedent to the application for the planned unit development project, the applicant shall first apply for a zone change of the parcel which is the subject matter of the proposed project.

Such an application is filed with the planning board, which, after a public hearing, and due deliberation on the merits of the application, reports to the municipal council on the zone change. Thereupon, the municipal council "acts" on the application.

No area can be considered for a zone change unless it can connect directly into adequate public water, sanitary sewer and storm sewer systems and unless an economic feasibility study has been submitted showing why such area should be zoned into PUD. R. O. § 211–113.4(A)(2).

The planning board, in its report to the governing body, must state its finding with regard to the proposed density for the subject project. R. O. § 211–113.4(A)(3).

The action of the municipal council must follow the criteria set forth in R. O. § 211–113.4(A)(4):

* * * the governing body of the Township of Wayne shall act upon the zone change, consistent with the intent and purposes of this Article and in the lawful exercise of its legislative discretion. The governing body shall consider the merits of the application, proposed location, site suitability, adaptability of the proposed site to concepts of planned unit development as distinguished from other conventional forms of zoning of the Township of Wayne.

Therefore, the initial application which the township must decide on is the request for a zone change. The application is not one for the approval of a specific site plan, but re-

lates to whether the area is suitable for PUD designation. Definitive site plans are not required prior to rezoning, although the applicant may submit preliminary sketches. However, any site plan material which is submitted prior to rezoning is considered advisory and is not binding upon the applicant. Subsequent to rezoning, the applicant is required to prepare definitive site plans and proceed through a tentative and final approval procedure, as required by the planned unit development ordinance.

The Wayne Township planned unit development ordinance and the subject application predate the Municipal Land Use Law, *N. J. S. A.* 40:55D-1 *et seq.* Although that law, which replaces prior land use regulation laws, became effective August 1, 1976, Section 81 and § 82 of that act authorize the continuation under prior law of any application preceding the effective date of the new act.

## II

Plaintiffs contend that the action of the municipal council in rejecting the recommendations of the planning board was unreasonable, arbitrary and capricious. They allege that the decision was based on factors "irrelevant to and unnecessary for its decision." They state that the council acted as if it was approving a specific site plan when all it was supposed to do at that point was review the appropriateness of the tract for designation as a PUD. This action, they further allege, points out a conflict between the Wayne Township PUD ordinance, which allows a change of zone and a site plan review, and the enabling act, *N. J. S. A.* 40: 55-56(c), which does not.

Plaintiff's argument is twofold. First, they claim that the approval of a tract for PUD designation must be made by the planning board. The municipal council thereafter must grant the zone change if the standards before the planning board were met. In effect, they allege that the municipal council's function is a ministerial one and, therefore, it has no discretion in granting the approval.

The township counters those arguments in stating that the determination to deny an amendatory zoning ordinance is a discretionary legislative function exercised by local government. It therefore argues that the court has no general supervisory power over the exercise of the legislative discretion of the municipal council in this matter. In any event, the township alleges that the record below reflects ample support for the determination of the council.

Primary authority for the town's position is *Finn v. Wayne Tp.*, 45 *N. J. Super.* 375 (App. Div. 1957). Plaintiff there sought, by way of writ of *mandamus*, to compel defendant township to take action on its request to amend the existing zoning ordinance by extending the industrial district so as to include their property, which was located within a Residence "B" district. The planning board recommended approval of plaintiff's application to the township committee; however, no action was taken thereafter either adopting or rejecting the proposed amendatory ordinance, and subsequently the *mandamus* suit was instituted to compel a decision by the township committee. The trial judge entered a judgment dismissing plaintiff's action. In affirming that judgment the Appellate Division stated:

A municipality is a political subdivision of the State, owing its existence and the extent of its authority to the will of the Legislature. When functioning within the orbit of the statutorily delegated power generally its actions are legislative in character; and the decision to act by ordinance or otherwise in the area of local government is generally one of discretion, unless a particular performance is imposed as an imperative by the enabling statute. Thus, although the authority exists to adopt a zoning ordinance, the determination to do so or to refrain therefrom rests in the discretion of the governing body. Courts have no general supervisory power over the exercise of that discretion. [at 379]

## III

Plaintiffs contend that by treating the present application as though it were one for site plan approval, the municipal council based its decision on factors irrelevant to and un-

necessary for its decision. Therefore, its refusal to grant P. U. D. designation was arbitrary and capricious.

The township argues that the decision to reject the zoning amendment was a product of the council's legislative discretion and, therefore, is not subject to the general supervisory power of the court. *Finn v. Wayne Tp., supra.*

■ ■ The court is cognizant of the fact that it should not substitute its judgment for that of a municipal governing body which has acted within its sphere of action, absent a showing of arbitrariness. *Hill Homeowners Ass'n v. Passaic Zoning Bd.,* 129 *N. J. Super.* 170 (Law Div. 1974), aff'd 134 *N. J. Super.* 107 (App. Div. 1974).

A local zoning determination will be set aside only when it is arbitrary, capricious or unreasonable. Even when doubt is entertained as to the wisdom of the action, or as to some part of it, there can be no judicial declaration of invalidity in the absence of a clear abuse of discretion by the public agencies involved. [*Kramer v. Sea Girt Bd. of Adj.,* 45 *N. J.* 268 (1965)]

Therefore, without a showing of arbitrariness, the decision of the township council not to allow the zone change should be allowed to stand.

■ The record below reflects support for the determination of the council. The record shows that the applicants failed to demonstrate the adequacy of their proposed storm sewer system and their lack of ability to connect directly into the sanitary sewer system. This is one of the requirements which must be met before the zone change will be granted. R. O. § 211–113.4(A)(3).

Plaintiffs have pointed out that the members of the council were somewhat painfully aware of their inability to have site plan approval. While the court feels the council was remiss in not providing specific findings of fact for their denial of plaintiff's application, the court is satisfied that the council did have enough before it on which to base their decision.

If, then, the township was acting within its statutory powers, its decision to reject the zoning amendment should be allowed to stand.

When functioning within the orbit of the statutorily delegated power generally its actions are legislative in character; and the decision to act by ordinance or otherwise is generally one of discretion * *' * [*Finn v. Wayne Tp., supra* 45 *N. J. Super.* at 379]

## IV

Plaintiffs also allege that the Wayne Township PUD ordinance is in conflict with the enabling act, *N. J. S. A.* 40 : 55–56(c), in two ways. First, that it provides for review by the municipal council of the determination by the planning board, which is the authority designated under the enabling act. Furthermore, the review is not limited to a conceptual approval alone, but purports to extend council review to site plan consideration.

The Township of Wayne adopted Ordinance 40 (1974), as amended, pursuant to authority granted by the Municipal Planned Unit Development Act. Section 4 of that ordinance, entitled "Designation of Municipal Authority," specifically designates the township planning board as that municipal authority authorized to exercise the powers set forth in the Municipal Planned Unit Development Act. The original ordinance further indicated that the township council was to embody the decision of the municipal authority — the planning board — in an ordinance authorizing the planned Unit Development District as recommended by the planning board. See § 5 of Ordinance 40, "Application for Planned Unit Development."

This particular section of the original ordinance was amended by Ordinance 126 of 1974. The amendment specified that an original application for a zone change to Planned Unit Development District shall be made to the Wayne Township Council. The amendment further noted that the council, rather than the municipal authority as designated

in the ordinance and as required in the authorizing legislation, was to consider the zone change application based upon the merits and other criteria set forth in the amendment. Ordinance 126 of 1974 further indicated that only if the township council acted favorably upon the application should the planning board then review the proposed project and considerations of same with respect to density. Ordinance 126 of 1974 did not change § 4 of the ordinance relating to the designation of municipal authority as required in accordance with *N. J. S. A.* 40:55–56 (c).

The original ordinance was further amended by Ordinance 161 of 1974 which related in large part to the application procedures for a Planned Unit Development, specifically with respect to § 5 as amended by Ordinance 126 of 1974. This most recent amendment (Ordinance 161) required the applicant to apply for a PUD designation of a parcel by filing an application with the planning board of the township, which was to consider all pertinent data and was further obligated to submit a report to the governing body stating what its findings were with respect to the proposed density of the subject project. The council was then to act upon the PUD designation consistent with the intent and purposes of the ordinance. Only in the event that the municipal council actually approved PUD designation of the applicant's tract would the applicant be allowed to make an application for tentative approval of the actual site plan to the planning board. The original planned unit development district ordinance of the Township of Wayne clearly designates the planning board as the municipal authority empowered to exercise the powers granted to the township by the Municipal Planned Unit Development Act. Plaintiffs contend that the final amendment to the planned unit development ordinance, as embodied in Ordinance 161 of 1974 with respect to filing an application for a planned unit development district, is unlawful in that it indirectly deprives the township planning board of the exercise of pow-

ers clearly granted in § 4 of the ordinance in compliance with *N. J. S. A.* 40:55–56(c).

## V

"Zoning is inherently an exercise of the State's police power" and "consequently, municipalities have no power to zone except as delegated to them by the Legislature." *Taxpayer's Ass'n of Weymouth Tp. Inc. v. Weymouth Tp.*, 71 *N. J.* 249, 263 (1976); *J. D. Construction Corp. v. Freehold Tp. Bd. of Adj.*, 119 *N. J. Super.* 140, 144 (Law Div. 1972); *Kirsch Holding Co. v. Manasquan*, 111 *N. J. Super.* 359, 365 (Law Div. 1970), rev'd on other grounds, 59 *N. J.* 241 (1971); *Piscitelli v. Scotch Plains Tp. Comm.*, 103 *N. J. Super.* 589, 594–95 (Law Div. 1968); see *N. J. Const.* (1947), Art. IV, § VI, par. 2.

Zoning powers are granted to municipalities by the zoning enabling act, *N. J. S. A.* 40:55–30 *et seq.* "Ordinances enacted under this grant of power, like other municipal ordinances, are accorded a presumption of validity which can only be overcome by an affirmative showing that the ordinance is arbitrary or unreasonable." *Taxpayer's Ass'n of Weymouth Tp., supra* 71 *N. J.* at 264; *Harvard Enterprises, Inc. v. Madison Tp. Bd. of Adj.*, 56 *N. J.* 362, 368 (1970); *Vickers v. Gloucester Tp. Comm.*, 37 *N. J.* 232, 242 (1962), cert. den. 371 *U. S.* 233, 83 *S. Ct.* 326, 9 *L. Ed.* 2d 495 (1963).

It is fundamental that zoning is a municipal legislative function, beyond the purview of interference by the courts unless an ordinance is seen in whole or in application to any particular property to be clearly arbitrary, capricious or unreasonable, or plainly contrary to fundamental principles of zoning or the statute. *N. J. S. A.* 40:55–31, 32. [*Bow & Arrow Manor v. West Orange*, 63 *N. J.* 335, 343 (1973)]

Plaintiffs argue that by amending this ordinance and returning the power to approve the zone change to the municipal council, the town has violated the powers given to

it by the enabling act. The act requires the appointment of the municipal authority to administer the P. U. D. ordinance. *N. J. S. A.* 40:55–56(c). Originally, the planning board was made that authority. The later amendments, however, gave the township council the final approval after the planning board made its recommendations. Plaintiffs contend that, by this latter act, the township has exceeded its delegated powers by usurping the authority of the planning board.

Municipalities must observe the limitations of the grant of their delegated powers. *Taxpayer's Ass'n of Weymouth, supra* 71 *N. J.* at 264; *Kohl v. Fair Lawn,* 50 *N. J.* 268 (1967); *Garden State Farms, Inc. v. Bay,* 136 *N. J. Super.* 1, 20–21 (Law Div. 1975); *Sussex Woodlands, Inc. v. West Milford Tp.,* 109 *N. J. Super.* 432 (Law Div. 1970). The subject ordinance was enacted pursuant to the grant of authority in *N. J. S. A.* 40:55–30 *et seq.* Under that statute, the municipality had to:

\* \* \* Designate the municipal authority which shall exercise the powers of the municipal authority, as herein defined; *N. J. S. A.* 40:55–56(c).

The "municipal authority" is later defined as

\* \* \* the governing body of a municipality, or the planning board \* \* \* which shall administer any ordinance adopted pursuant to this act. [*N. J. S. A.* 40:55–65(c)]

Thus, it appears from this grant of authority that the township had the choice originally to appoint either the municipal council or the planning board as the authority to administer the P.U.D. ordinance. Originally, the authority was given to the planning board. This was later amended to provide for municipal council approval after a recommendation by the planning board.

An analogous situation was dealt with in *Guaclides v. Englewood Cliffs,* 119 *N. J. Super.* 403 (Law Div.

1972). There, plaintiffs challenged the fact that the mayor and council had reserved the power for site plan approvals based on planning board recommendations. The court there held that although *N. J. S. A.* 40:55-1.13 allowed the governing body to refer site plan approval to the planning board, it did not *require* that the planning board have the final word. The court concluded (at 406) that "the right of the mayor and council to reserve to itself the power to approve or disapprove site plan recommendations is unquestionable." Furthermore, the court held that the town's motive for reserving that power was irrelevant:

The assertion by plaintiffs that the exercise of this right was a politically motivated attempt by the governing body to usurp the power of the planning board does not invalidate the ordinance. Plaintiff has failed to show "fraud, personal interest, or corruption." *La Rue v. East Brunswick*, 68 *N. J. Super.* 435, 445 (App. Div. 1961). As long as "there was legal power to adopt the ordinance, the motives of the members of the governing body are immaterial." *Saki v. Woodbridge Tp.*, 69 *N. J. Super.* 327, 333 (Law Div. 1961).

It seems apparent to the court, based on the foregoing analysis, that the governing body of Wayne could have chosen to authorize either itself or the planning board to administer the P.U.D. ordinance. It did at first authorize the planning board. However, that was later amended, and the final decision was given back to the municipal council. Where the township had the power to invest the municipal council with the authority in the first instance, the court can find nothing wrong with a later decision to do so, if after those amendments the ordinance still conformed to the enabling act.

However, by these amendments, the township also added a step to the process by requiring a zone change as a condition precedent to an application for a planned unit development. R. O. ce 211–13.4(A)(1). Both parties appear to agree that the planned unit development district was contemplated and enacted as a "floating zone" applicable to any tract within the township containing a minimum of 100 acres.

Both parties disagree, however, over what that term actually means and what effect it has.

The township argues that the "floating zone" concept is a device frequently used to interject flexibility into the various zoning classifications. The technique, however, requires a separate legislative change in zone for each project. They allege that the use of this concept has been sanctioned by the court in *Rudderow v. Mount Laurel Tp. Comm.*, 114 *N. J. Super.* 104 (Law Div. 1971), rev'd 121 *N. J. Super.* 409 (App. Div. 1972). They liken it to a "triggering mechanism" which initiates the application for planned unit development. Therefore, until such a change is made, the township contends that no P.U.D. application is before the "municipal authority."

Plaintiffs believe, however, that a "floating zone" is potentially applicable to any tract which meets the basic requirements. They contend that it does not necessitate a zone change, but merely a redesignation of a tract which meets the requirements. In actuality, it is an application of a simultaneously existing classification when such application is determined to be appropriate by the municipal authority designated by the ordinance in accordance with *N. J. S. A.* 40:55–56(c).

The *Rudderow* case, cited in support by the township, provides us with a summary of the purposes for which New Jersey's Municipal Planned Unit Development Act (1967), *N. J. S. A.* 40:55–54 *et seq.* was enacted:

In summary, P.U.D. is a recognition by the Legislature that the "Euclidian" (traditional) zoning approach, adopted in New Jersey about 50 years ago, had outlived its usefulness, and that new and more creative approaches had to be adopted to overcome "Euclidian" zoning inequities and deficiencies, and enable municipalities to provide for housing and other public needs for the present and reasonably foreseeable future. P.U.D. is the antithesis of the exclusive districting principle which is the mainstay of "Euclidian" zoning. The latter approach divided a community into districts, and explicitly mandated segregated uses. P.U.D., on the other hand, is an instrument of land use control which augments and supplements existing master plans and zoning ordinances and permits a mixture

of land uses on the same tract (i. e. residential, commercial and industrial). [*Rudderow*, at 412–413]

The act itself discusses in various sections its purposes of increased flexibility without the undue delay caused by a multiplicity of local procedures. *N. J. S. A.* 40:55–55, 40:55–59. Nowhere in the act does it state that a zone change is a condition precedent to a P.U.D. application.

In *Rudderow* the court upheld the Mt. Laurel P.U.D. statute even though it did not provide for the creation of specific districts. "To require P.U.D. ordinances to establish specific districts wherein a P.U.D. may be authorized, would destroy the very purpose and philosophy for its creation." *Rudderow, supra* at 416.

If, however, the township makes each applicant for a P.U.D. go through this two-step process, is it not also defeating the purpose of the act? It appears to the court that the procedures for the tentative and final approval of a P.U.D. project are thorough enough for the township to decide whether a project is appropriate for a particular area. In fact, there is dictum to that effect in *Dover Tp. Homeowners v. Dover Tp.,* 114 *N. J. Super.* 270 (App. Div. 1971). Although the case dealt with another area, the court in *Dover* did state (at 278) that "the approval of a P.U.D. application creates a zone for a specific area different from all other areas." Since the statute itself provides that any tract may be designated as suitable for P.U.D., where is the necessity for the extra step in the process? The court is of the opinion that requiring the zone to be changed before a P.U.D. application can be made is, in effect, establishing again the specific districts where a P.U.D. may be authorized, which was ruled inappropriate in *Rudderow.*

Furthermore, this extra procedure appears to be in direct conflict wtih the enabling act. The enabling act requires the designation of the "municipal authority" to administer the act. R. O. § 211–113.3 designates the planning board as that authority. Yet the following section, R. O. § 211–113.4 re-

serves the final decision to the municipal council. While the court agrees that the Township could have made the municipal council the "municipal authority" to administer the act, the court feels that it has not properly invested itself with that authority in this case. The planning board is the authority but it cannot make the final decision. This appears to be in conflict not only with the Municipal Planned Unit Development Act, but also with the previously mentioned section of the ordinance. Therefore, it would seem that this second added procedure established by the amendment are both inconsistent with the enabling legislation and adverse to the specific direct grant of power of the ordinance.

## VI

Therefore, the court finds that R. O. § 211–113.4, which reserves the final decision to the municipal council, is in conflict with R. O. § 211–113.3, which designates the planning board as the municipal authority to administer the act. Either the municipal council or the planning board may be designated as the municipal authority, but it cannot be divided as the township has attempted to do here. Furthermore, the court is of the opinion that an application for a zone change as a condition precedent to a P.U.D. application is an additional and unnecessary step which is neither mandated nor provided for by the enabling act.

Under the subject ordinance, if a conflict with the enabling act develops, R. O. § 211–113.10 requires that the ordinance "be interpreted so as to be consistent with the Municipal Planned Unit Development Act (1967)." That same section also provides that any invalidity shall not affect the remaining portions of the ordinance. Therefore, that section reserving a final decision to the municipal council may be invalidated without invalidating the remainder of the ordinance.

The township has asked in its brief that in the event that the ordinance is held invalid, it be afforded an opportunity to amend the invalid portion of the ordinance. This pro-

cedure was noted in *Pascack Ass'n v. Washington Tp.,* 131 *N. J. Super.* 195 (App. Div. 1974), where the court decided it would have to go further where those original instructions were not followed. However, "The municipality should first have full opportunity to itself act without judicial supervision." *So. Burl. City N.A.A.C.P. v. Mt. Laurel Tp.,* 67 *N. J.* 151, 192 (1975), cert. den. 423 *U. S.* 808, 96 *S. Ct.* 18, 46 *L. Ed.* 2d 28 (1975).

In holding the zoning ordinance under review invalid, it must be noted that the court is not directing the municipality to rezone the plaintiff's property * * * it is not the province of the court to specify zoning densities or to exercise any other control at this juncture over the manner in which the township must meet its obligation . . . these choices are properly a function of the legislative power which it must exercise with reasonable promptness and in accordance with the requirements of the statute. [*Pascack, supra* 131 *N. J. Super.* at 198]

Based on the foregoing discussion, the Township of Wayne is hereby directed to amend that section of their P.U.D. ordinance which has been declared invalid. The court is not, however, directing the township to grant plaintiff's P.U.D. application at this time. Plaintiffs should resubmit their application once the ordinance has been amended.

Plaintiff's motion for summary judgment is therefore granted in part and denied in part. Defendant's cross-motion for summary judgment is denied.