161 N.J. Super. 367 (1978)
391 A.2d 960
GEORGE HARMS CONSTRUCTION COMPANY, INC., PLAINTIFF,
v.
BOROUGH OF LINCOLN PARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND D'ANNUNZIO  FIRESIDE UTILITY CONTRACTORS CORPORATION AND DISTRICT ASSOCIATES, INC., A JOINT VENTURE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 6, 1978.
*369 Mr. Theodore W. Geiser for plaintiff (Messrs. McElroy, Connell, Foley and Geiser, attorneys).
Mr. Frank Scangarella for defendant Borough of Lincoln Park (Messrs. Scangarella and Feeney, attorneys).
Mr. S. Philip Klein for defendant D'Annunzio  Fireside Utility Contractors Corporation and District Associates, Inc. (Messrs. Ozzard, Rizzolo, Klein, Mauro and Savo, attorneys).
MacKENZIE, J.C.C. (temporarily assigned).
The matter comes on for expedited resolution on the return date of an order to show cause with temporary restraints issued following the filing of a complaint in lieu of prerogative writs. Both defendants have answered. Defendant D'Annunzio  Fireside Utility Contractors Corporation and District Associates, Inc., a joint venture (hereinafter D'Annunzio), has cross-claimed and counterclaimed. Filed affidavits disclose no contested issue of material fact. The matter may be treated with consent of all counsel as though cross-motions for summary judgment were before the court. R. 4:46.
On May 12, 1978, at about 10 A.M., the Borough of Lincoln Park (borough) received bids for the performance of certain construction work on a $6,000,000 project known and designated as Contract No. 3, Borough of Lincoln Park, Sanitary Sewerage Collection System, which involved the construction of a substantial portion of its sanitary sewerage collection system. Upon the opening and tabulation of the bids it was discovered that the apparent low bidder, D'Annunzio, failed to provide a list of stockholders as required by N.J.S.A. 52:25-24.2. The bid solicitation prepared by *370 the borough contained specific reference to the statute.[1] The apparent second low bidder, George Harms Construction Company, Inc. (hereinafter "Harms") noted this irregularity and voiced its objection and sought to have the apparent low bidder disqualified. Shortly thereafter, D'Annunzio submitted a document to the Borough which purported to satisfy the requirements of N.J.S.A. 52:25-24.2. The difference between the bids of D'Annunzio and Harms is approximately $200,000.
Upon receipt of Harms' objection and challenge to the award of the contract to D'Annunzio, the Borough promptly scheduled a hearing on June 5, 1978, at which time the attorneys for both bidders were given an opportunity to address the governing body on the question of the challenge to the qualification of the apparent low bidder. The governing body of the Borough considered the challenge and on June 12, 1978, unanimously passed a resolution rejecting the challenge by Harms on the strength of its conclusion that the municipality had the authority to waive the non-compliance of D'Annunzio.
On June 23, 1978 the court entered an order restraining the borough from undertaking any actions whatsoever with respect to the execution, signing or award of the subject contract, pending the return date of the plaintiff's order to *371 show cause. Resolution of the case turns on the meaning of N.J.S.A. 52:25-24.2.
In essence, N.J.S.A. 52:25-24.2 (L. 1977, c. 33) requires corporate or partnership bidders on state, county, municipal or school district contracts to submit, prior to or accompanying the bid, a list of all stockholders or partners owning 10% or more of stock or interest in the firm. It provides in pertinent part that

No corporation or partnership shall be awarded any contract * * * for the performance of any work * * * the cost of which is to be paid with or out of any public funds by the State, or any county, municipality * * * unless prior to the receipt of the bid or accompanying the bid, of said corporation or said partnership, there is submitted a statement setting forth the names and addresses of all stockholders in the corporation or partnership who own 10% or more of its stock. * * * If one or more such stockholder or partner is itself a corporation or partnership, the stockholders holding 10% or more of that corporations stock, or the individual partners owning 10% or greater interest in the partnership, as the case may be, shall also be listed. The disclosure shall be continued until names and addresses of every noncorporate stockholder, and individual partner, exceeding the 10% ownership criteria established in this act, has been listed. [Emphasis supplied]
For reasons hereafter stated, the statute must be given its plain meaning.[2] The key operative words are "no" and "shall".[3] In this statutory context they indicate a *372 mandatory imperative. In general, whether a statute is mandatory or directory depends upon the intent of the Legislature. Durgin v. Brown, 37 N.J. 189, 197 (1962). The Legislature in enacting N.J.S.A. 52:25-24.2 expressed its clear purpose to ensure that all members of a governing body and the public be made aware of the real parties in interest with whom they are asked to contract. Thus the public, as well as public officials, can identify any real or potential conflicts of interest arising out of the awarding of public contracts, or can identify those bidders who lack the requisite responsibility. Assembly Bill 22 (1976), "Statement of Purpose." Identity also serves the useful function of permitting the municipality to assess the experience, financial ability and moral integrity of the bidders. See Arthur Venneri Co. v. Paterson Housing Auth., 29 N.J. 392, 402-403 (1959). By requiring the identity disclosure statement to be submitted with the bid (or prior thereto) the Legislature evinced an intention that any bid not containing such a statement would not be a valid bid. Assembly Bill 22 (1976), "Statement of Assembly Municipal Government Committee"; Assembly Bill 22 (1976), "Statement of Senate State Government, Federal and Interstate Relations and Veterans Affairs Committee." No bidder submitting such an invalid bid is eligible to be awarded the public contract. Any other interpretation of the statute would render nugatory the meaning of the clear language used. The character of the legislation and a reading thereof in context justifies a mandatory, imperative construction.
D'Annunzio argues that the holding of In re Munson-Lied Co., 68 N.J. Super. 281 (App. Div. 1961), which involved *373 an assignment for the benefit of creditors, requires this court to give a directory or instructional construction to the statute. The crucial issue in Munson-Lied was whether the statutory use of the word "shall" was of the essence of the law or merely related to form and manner. If no public benefit ensues and no private right is insured, the word "shall" is to be construed as directory. Here, clear public benefit in terms of public disclosure at the time the bids are opened identifying those seeking public contracts is perceived in the statute. A private right to the lowest responsible bidder is insured. Munson-Lied is not inconsistent with a conclusion that the use of "no" and "shall" in N.J.S.A. 52:25-24.2 creates a mandatory imperative.[4]
There is no provision in the statute permitting a municipality to waive the requirement of disclosure or to allow a bidder additional time following the acceptance of bids to cure an invalid bid. The absence of such a provision is significant because the Legislature is surely aware of the Local Public Contracts Law, N.J.S.A. 40A:11-1 et seq. The latter statute provides the framework for the solicitation of public bids. The 1977 statute evinces a supervening requirement imposed upon the bidding framework. The policy of the State is to guard against favoritism and unfair competition by demanding integrity of the bidding process through strict construction of bidding standards. In L. Pucillo & Sons, Inc. v. New Milford Mayor and Council, 73 N.J. 349 (1977), the court explained:
* * * [t]he long-standing judicial policy in construing cases governed by the Local Public Contracts Law, N.J. Stat. Ann. § 40A:11-1, et seq. and its predecessors has been to curtail the discretion *374 of local authorities by demanding strict compliance with public bidding guidelines. [at 356]
Strict construction is essential if integrity of bidding is to be achieved via the Local Public Contracts Law and N.J.S.A. 52:25-24.2, read in pari materia. The action by the borough in waiving noncompliance with the identity disclosure statute has created precisely the type of result which the Legislature sought to avoid in enacting a statute designed to preserve fair competition through conformance with an established framework for public contract bidding.
Is D'Annunzio's failure to submit a stockholder's disclosure statement a material omission which requires invalidity of its bid? Put another way, may late submission relate back nunc pro tunc to the time of acceptance of bid? May failure to comply with the statutory mandate be waived by the borough?
A competitive bidding system can only be fully effective if the advertised conditions and statutory requirements apply equally to all prospective bidders, since there is otherwise no common standard of competition. It follows that all bids must comply with the terms imposed including those of N.J.S.A. 52:25-24.2, and that any material departure from those terms will invalidate both the nonconforming bid and any contract based upon it. Hillside Tp. v. Sternin, 25 N.J. 317 (1957). Thus, the "lowest bidder" is not simply the one who submits the lowest bid, but rather the one who submits the lowest bid which conforms with the specifications and statutory requirements. In essence, where a party does not materially respond to the bid specifications he cannot be classified as a bidder at all, since the specifications are mandatory and jurisdictional. Id. at 324.
A bidding process, the form of which is carefully circumscribed by certain statutory prerequisites, is deeply rooted in sound principles of public policy. The New Jersey Legislature has provided for such a scheme in the Local Public Contracts Law. N.J.S.A. 40A:11-1 and N.J.S.A. 52:25-24.2. *375 The fundamental purposes of requiring competitive bidding for public projects are (1) to assure the public benefits of open competition and (2) to guard against favoritism, improvidence, extravagance and corruption. Hillside Tp. v. Sternin, supra at 322 (1957). Accord, Trap Rock Industries, Inc. v. Kohl, 59 N.J. 471, 479 (1971), cert. den. 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972). Competitive bidding statutes exist for the benefit of the taxpayers, and are to be rigidly adhered to. Hillside Tp. v. Sternin, supra 25 N.J. at 322; M.A. Stephen Construction Co. v. Rumson, 118 N.J. Super. 523, 525 (Law Div. 1972), aff'd 125 N.J. Super. 67 (App. Div. 1973). There is nothing whatsoever in the language or purpose behind N.J.S.A. 52:25-24.2 which would indicate that a failure to comply with its requirements could be considered an immaterial omission or a waivable irregularity. On the contrary, noncompliance with the statute goes to the essence of the legislation. If the disclosure requirements were waivable, the statute would serve no function.
Insistence on literal compliance with the letter of every specification serves to foster the public purpose of genuine competition on common terms. In this regard, our Supreme Court has stated that when in doubt as to the materiality of a bid error, the authority making the decision should err on the side of strictness, for "[i]n this field it is better to leave the door tightly closed than to permit it to be ajar, thus necessitating forevermore * * * speculation as to whether or not it was purposely left that way." Hillside Tp. v. Sternin, supra 25 N.J. at 326. In Sternin the Supreme Court concluded:
* * * the efficacy of our competitive bidding statute depends upon its rigorous enforcement. Approval of a relaxation even to the extent sought in this instance [of failure to submit a certified check with the bid] would make necessary an evaluation in future cases of sensitive, subtle and subjective criteria, and such a practice does not harmonize with the underlying objective of the Legislature. [at 327-28]
*376 While the borough would seem to have some discretion in this area, our courts have recognized that the materiality of a particular specification is to be determined as matter of law. Hanover Tp. v. Inter. Fidelity Ins. Co., 122 N.J. Super. 544, 548 (App. Div. 1973); River Vale Tp. v. R.J. Longo Constr. Co., 127 N.J. Super. 207, 215 (Law Div. 1974). In River Vale Tp., the court stated that the two criteria for determining whether a specific noncompliance constitutes a substantial and hence nonwaivable irregularity are: (1) whether the effect of a waiver would be to deprive the public body of its assurance that the contract will be entered into, performed and guaranteed according to its specific requirements, and (2) whether it is of such a nature that its waiver would adversely effect competitive bidding by placing a bidder in a position of advantage over the other bidders or by otherwise undermining the necessary common standard of competition.
In furtherance of the public policy of open competition on common terms, the courts of New Jersey have consistently held that where an error is deemed material, it cannot be cured after the bids are opened, even where, as defendant here asserts, the error results from simple negligence. Begraft v. Franklin, 133 N.J. Super. 415 (App. Div. 1975); William A. Carey & Co. v. Fair Lawn, 37 N.J. Super. 159 (App. Div. 1955); Belousofsky v. Linden Bd. of Ed., 54 N.J. Super. 219 (App. Div. 1959). Indeed, to permit correction of material deficiencies after bid opening would open the door to fraud and favoritism and defeat the statutory purpose of protection to the taxpayer. See Tufano v. Cliffside Park, 110 N.J.L. 370 (Sup. Ct. 1933).
A minor informality or irregularity is one which is merely a matter of form or some inconsequential defect or variation from the exact requirements of the invitation for bids. Here, to permit the borough to waive the requirements of N.J.S.A. 52:25-24.2 would render the statute nugatory. The Legislature has nowhere indicated that any power reposes in the municipalities to waive compliance with N.J.S.A. *377 52:25-24.2. Such an action is clearly ultra vires the power of the borough.
If, after opening of the bids, D'Annunzio had decided, for whatever reason (e.g., a change in its business conditions or an unreasonably low bid price), that it did not want the award, it could have refused to forward the stockholder statement. At that point the borough would have no choice but to reject D'Annunzio's bid. Therefore, the borough was deprived of its assurance that the contract would be entered into, performed and guaranteed according to its specific requirements and the mandate of the Legislature. Furthermore, D'Annunzio was placed in a position of advantage over the other bidders, which only serves to undermine the necessary common standard of competition. Had other bidders known in advance that they could avoid timely filing of the disclosure statement or that it would be waived by the borough, one may speculate the possibility of another and lower bid. As pointed out in Case v. Trenton, 76 N.J.L. 696, 700 (E. & A. 1909), "the presence of the condition may have deterred others from bidding, who would have bid had they known that these conditions would be waived."
D'Annunzio argues that its failure to submit a stockholder's disclosure statement could have been waived by the borough. This argument has no merit in light of the contract provisions and the valid public policy which N.J.S.A. 52:25-24.2 is designed to implement. Moreover, D'Annunzio has cited no authority for its assertion that a municipality may waive a statutory imperative. All the waiver cases deal with minor deviation from bidding specifications, not a statutory mandate. See cases cited in Terminal Constr. Corp. v. Atlantic City Sewerage Auth., 67 N.J. 403, 411 (1975), including Young v. West Orange Redevelopment Agency, 125 N.J. Super. 440 (App. Div. 1973) (time for receiving bids); Bryan Constr. Co. v. Montclair Board of Trustees, etc., 31 N.J. Super. 200 (App. Div. 1954) (form of bid security). In addition, such a waiver would place D'Annunzio in a position of advantage over the other bidders by not *378 requiring them to comply with the specifications, thereby saving them not only the time but the necessary expense. Such a waiver, therefore, would be in direct contravention of the public policy principles which require competitive bidding. See Albert F. Ruehl Co. v. Board of Trustees, Industrial Ed., 85 N.J. Super. 4 (Law Div. 1964).
Finally, D'Annunzio asserts that its bid should be accepted in spite of its deficiencies in view of its attempt to cure the defect at issue. Such a contention is without merit. However, even assuming that the borough had authority to accept the disclosure statement nunc pro tunc in the attempt to cure, submission of the document by D'Annunzio also failed to comply with the statute and was nonresponsive.[5] Thus, the argument that D'Annunzio complied with N.J.S.A. 52:25-24.2, even out of time, is rejected.
Considering the relevant statutory provisions, the valid public purposes which the statute is designed to implement and the fact that D'Annunzio was placed in a position where he could accept or reject the award, it is concluded that the submission of a properly filed stockholder's disclosure statement is an essential and material part of the contract as a matter of law, and therefore such omission could not be waived or cured. D'Annunzio's bid was invalid when received; the bid is ineligible and disqualified for award of this public contract. This decision does not, however, resolve the case.
Harms in its complaint demands that the borough award the contract to it as the lowest responsible bidder. D'Annunzio seeks, by way of counterclaim and crossclaim against the borough, alternate relief ordering the borough to reject all bids and resubmit the contract to further bidding.
*379 N.J.S.A. 40A:11-24 authorizes a bidding public entity to "award the contract or reject all bids." Consistent with such authority, the notice to bidders produced by the borough in connection with the contract, provides that "the Borough reserves the right to reject any and all proposals or to accept any proposal deemed to be in the best interest of the Borough."
The contract will be funded, in part (75%), by a grant under the Federal Water Pollution Control Act (as amended by the Federal Water Pollution Control Act Amendments of 1972  Public Law 92-500), and a supplemental grant under the Local Public Works Capital Development Investment Act of 1976 (Public Works Act), and as such, the contract and the award thereof are subject to applicable federal regulations as a condition to the grant award. In that connection, the United States Environmental Protection Agency (hereafter E.P.A.) issued, on February 13, 1978, a Program Requirements Memorandum (P.R.M. 78-8) concerning the subject of grant eligibility and rejection of bids. P.R.M. 78-8 provides, in pertinent part, "Nothing in this P.R.M. prohibits a Regional Administrator, in recognition of a paramount Federal interest, from limiting the amount of grant assistance or any re-solicitation to the Federal share of the lowest bid which could have been accepted by a grantee, or from requiring bid rejection." (Emphasis supplied).
The court should not and will not interfere with the local administrative processes by directing the award of the contract to Harms. The borough is allowed to retain and directed to exercise the statutory option pursuant to N.J.S.A. 40A:11-24 to reject all bids. It ought not expend an extra $200,000 of public monies merely for expediency.
As a general rule, the court should not attempt to exercise supervision over municipal discretionary authority, absent a showing of arbitrariness. Yousefian v. Wayne Tp. Municipal Council, 152 N.J. Super. 111 (Law Div. 1977); Albigese *380 v. Jersey City, 127 N.J. Super. 101 (Law Div. 1974), mod. 129 N.J. Super. 567 (App. Div. 1974). Especially where the municipal action is within the powers conferred by statute, as in the case at bar, the court should not substitute its judgment for that of the governing body. The admonition of judicial interference with the municipal legislative function has been most recently reported in Pascack Association, Ltd. v. Washington Tp. Mayor and Council, 131 N.J. Super. 195 (Law Div. 1974), mod. 74 N.J. 470 (1977), involving local zoning prerogatives. However, a court-mandated award of the bid to Harms could not only serve to jeopardize the grant agreement between the E.P.A. and the borough by frustrating the right and authority of the Regional Administrator from requiring bid rejection, but also cost the taxpayers a substantial amount of money. In these circumstances rebidding would best serve the interests of the public.
Arrogation of municipal responsibilities is not the goal of this court. In less imminent circumstances the decision of whether to accept the Harms bid or reject all bids could be made by the borough after evaluating various factors, e.g. anticipated rise (or fall) in labor and material costs to bidders at time of rebid, amount of time needed to allow for resolicitation of bids, continued interest in the project by potential bidders, etc. Here, the statutory 60 day deadline for awarding the contract expires on July 11, 1978. N.J.S.A. 40A:11-24.[6] Five days, inclusive of a summer weekend, seems an unreasonably short time to marshal and weigh the relevant factors. The temptation to accept the Harms bid because federal funds rather than local moneys are to be expended on the contract could easily countervail over an intelligent appraisal of the crucial considerations. *381 Without intending to demean the borough officials by judging their actions in advance, it is preferable to remove the decision from their discretion. Court ordered rebidding is not contraindicated by any of the statutory or decisional authorities which were cited by counsel. Rebidding was specifically required by the Supreme Court in L. Pucillo & Sons, Inc. v. Mayor and Council of Borough of New Milford, supra, 73 N.J. at 359.
Accordingly, judgment is entered on the complaint enjoining the borough from awarding a contract for the performance of Contract No. 3 Borough of Lincoln Park Sanitary Sewerage Collection System to D'Annunzio based on its bid received on May 12, 1978, and on the counterclaim and crossclaim ordering the borough to reject all bids and to resubmit the contract to further bidding. All other demands for relief are denied and dismissed, without costs as to any party.
NOTES
[1] The following language was included in the bid notice:

Chapter 33 of the Public Laws of 1977 provides that no corporation or partnership shall be awarded any State, county, municipal or school district contract for the performance of any work or the furnishing of any materials or supplies, unless prior to the receipt of the bid or accompanying the bid of said corporation or partnership there is submitted a statement. The statement shall set forth the names and addresses of all stockholders in the corporation or partnership who own ten percent or more of its stock of any class, or of all individual partners in the partnership who own a ten percent or greater interest therein.
In the event there is no individual stockholder in the corporation or partnership who owns ten percent (10%) or more of the stock of any class, the bidder shall submit a statement indicating such.
[2] As was aptly pointed out in Taureck v. Jersey City, 149 N.J. Super. 503 (Law Div. 1977):

Where the language of a statute is clear and unambiguous, courts may hold that the construction intended by the Legislature is obvious from the language used. Although the form of the verb in the statute, e.g., "may," "shall," "must," is the most significant consideration bearing on whether a statute is mandatory or directive, it is not conclusive. Where the word "shall" is used in a statute the presumption is that its use is imperative and not merely directory, unless the character of the legislation or the context justifies a different meaning Ervolini v. Camden County, 127 N.J.L. 473 (Sup. Ct. 1941). [at 513]
[3] Statutory use of the word "shall" is commonly held to be imperative and mandatory. In Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162 (1954), a case requiring construction of N.J.S.A. 54:2-43, the court stated that:

[I]n determining whether an act is imperative and mandatory or merely directory there shall be a presumption that the word "shall" ... is used in an imperative and not a directory sense, and while this presumption is not a conclusive one it can only be overthrown by something in the character of the legislation or in the context which will justify a different meaning. [at 166]
[4] One can argue that a greater public benefit will accrue if the public disclosure is made at the time of the award of contract rather than receipt of bid, given the ease of transferring stock ownership. This argument ignores, however, the manner in which the Legislature has spoken. It is not for this court to ignore the decision made by the Legislature.
[5] A list of stockholders was submitted to the borough by D'Annunzio after receipt of the Harms telegram. On June 20, 1978 addresses were provided.
[6] The 1975 amendment rewrote the statute as originally enacted, L. 1975, c. 353, § 14, eff. March 3, 1976. A somewhat complicated procedure for extending the time for consideration of bids by inter-party agreement is provided for in that statute.