599 A.2d 589

SCHLUMBERGER INDUSTRIES, INC., PLAINTIFF–RESPONDENT, CROSS–APPELLANT, v. BOROUGH OF AVALON, DEFENDANT–RESPONDENT, AND HEIGHTS INDUSTRIES, INC., INTERVENOR–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 17, 1991—Decided December 5, 1991.

Before Judges KING, DREIER and GRUCCIO.

*Rocco J. LaBella* argued the cause for intervenor-appellant (*Ferro, Lippman, LaBella & Logerfo,* attorneys; *Rocco J. LaBella* on the brief).

*John M. Donnelly* argued the cause for respondent-cross-appellant (*Clapp & Eisenberg,* attorneys; *John M. Donnelly,* on the brief).

*Vincent L. Lamanna, Jr.,* attorney for respondent Borough of Avalon (*Vincent L. Lamanna* on the letter brief).

The opinion of the court was delivered by

DREIER, J.A.D.

Defendant Heights Industries Inc. as intervenor,[1] appeals from an order of the Law Division invalidating its bid for contract No. 23, water meter replacement, of the Borough of Avalon, Cape May County. Following the rejection of the Heights bid, and at the direction of the trial court, the municipality determined to rebid the contract.

This action was instituted by Schlumberger Industries, Inc., a wholly-owned subsidiary of Schlumberger Technology Corporation, in turn a wholly-owned subsidiary of Schlumberger, Ltd., a publicly-traded corporation listed on the New York Stock Exchange. Schlumberger had been the low bidder on the water meter contract, but on advice of the Borough attorney its bid had been rejected for failure to supply an answer to the following question contained in the bidding specifications:

> The full names and residences of all persons and parties interested in this proposal as principals are as follows below: (Note: for each person give the first and last names in full. Record each member of a co-partnership in the case of a corporation, give the names of the president, secretary, treasurer, manager, and directors, and state the place of the incorporation). Whether the bidder is a corporation or a partnership, give the names and addresses of all stockholders in the corporation or partnership who own 10% or more of its stock, of any class, or of all individual partners in the partnership who own a

---

[1] This court granted Heights' motion for intervention and directed that this matter be set down immediately on a short briefing schedule for argument and immediate decision.

10% or greater interest therein, as the case may be. If one or more such stockholder or partner is itself a corporation or partnership, the names and addresses of stockholders holding 10% or more of that corporation's stock, or of the individual partners owning 10% or greater interest in that partnership, as the case may be, shall also be listed.[2]

Schlumberger has also cross-appealed from the additional determination of the trial judge that its bid was correctly rejected for its failure to answer this question. The Borough of Avalon asserts that it did not receive a notice of the cross-appeal, and Heights claims that it did not receive the Schlumberger brief within a sufficient time prior to oral argument in this matter to enable it to answer the arguments in the brief adequately.[3] We have decided not to adjudicate the Schlumberger cross-appeal which may be rendered moot by this decision after remand. We will, however, refer to as many issues in the cross-appeal as may be necessary for us to give an explication of our reasoning to guide the trial judge or Borough if a further remand is necessary. We have therefore attempted to clarify the import of *N.J.S.A.* 52:25–24.2 which requires a statement of a bidder's ownership to be supplied prior to or accompanying a bid on a public contract.

The bids were opened by the Borough on May 1, 1991, Schlumberger being the low bidder by approximately $53,000 on a contract of approximately $450,000. At the May 22, 1991 meeting of the Borough Council, the territorial manager of Schlumberger objected to the rejection of the Schlumberger bid and further objected to the awarding of the bid to Heights with the resultant loss to the municipality of $53,000. He suggested that all bids be rejected and that the project be readvertised. He explained that the ownership disclosure question was not

---

[2]A complete answer for Schlumberger Industries Inc. would have been that it was a wholly-owned subsidiary of Schlumberger Technology Corporation, itself a wholly-owned subsidiary of Schlumberger, Ltd., and that there were no stockholders in Schlumberger, Ltd. owning more than 10% of the stock.

[3]Heights has filed with us, however, a short response to the arguments raised.

completed through an oversight. Another representative of Schlumberger explained that no individual owned more than 10% of the stock and that the Corporation is a six billion dollar company listed on the New York Stock Exchange. He also suggested that the matter be rebid so that the Borough could save $53,000 and that little work would be necessary in the rebidding process, since the specifications had already been prepared. A representative of Heights urged that the contract be awarded to Heights and that the cost difference might not be as great as Schlumberger suggested. When a Council member suggested that Schlumberger might be permitted to supplement the bid and provide the additional information, the Borough attorney stated "[I]t doesn't make any difference. It's not a curable defect." By a three to two vote the contract was awarded to Heights.

The trial judge heard and determined Schlumberger's action in lieu of prerogative writs on June 14, 1991. Although the judge then had before him both the Heights and Schlumberger bids, the parties before him were only Schlumberger and the Borough. The judge analyzed the authorities affecting Schlumberger's bid and agreed with the Borough Council that the bid was properly rejected. Over the Borough's objection, and without input from (or even notice to) Heights, the judge also examined the Heights bid and found that it too was substantially nonconforming to the bid specifications in that the bid bond differed materially from that required by the specifications. He determined that the Heights' defect also was not waivable. He directed that the Heights bid also "be deemed rejected and the contract be put out for rebid consistent with this opinion." After a motion for reconsideration, the judge issued a supplemental letter opinion on July 8, 1991. Significantly, this letter opinion contained the following observation:

> The fact of the matter is that the Borough's position in this matter has been puzzling throughout. They admit to this court that no one in Schlumberger's chain of stock ownership owns more than 10% of the shares of the company. They further assert that failure of Schlumberger to so state is not curable. The Borough imposes rather strenuous and specific bid and bonding require-

ments in its bidding specifications and then without formally meeting and deciding the matter, represents to the court through counsel that those defects are immaterial and waivable even though some are of statutory dimension.

We agree with the trial judge that the Borough's conduct in this regard was "puzzling."

We have been informed by counsel that the project has been rebid and that Schlumberger again was the low bidder at $435,791. The second lowest bid was received from another company for $477,222, and the third lowest bidder was Heights, at $482,951. Incidentally, plaintiff's counsel has represented (substantiated by a certification in Schlumberger's late-filed brief), that the information concerning Schlumberger's ownership had previously been supplied to the Borough throughout extensive negotiations for both an earlier contract and this contract. Plaintiff therefore claims that the Borough was well aware of its corporate structure and should have been aware of the fact that there were no individual stockholders owning in excess of 10% of Schlumberger's stock.

On this appeal, Heights first challenges Schlumberger's standing to raise the invalidity of the Heights' bid, since Schlumberger's bid had already been rejected. *See Waszen v. Atlantic City*, 1 *N.J.* 272, 276, 63 *A.*2d 255 (1949). Putting to one side Heights' absence at the proceedings, we see no problem in this regard. While Schlumberger's bid had been rejected by the Borough Council, it had commenced this action to overturn the municipal determination. Schlumberger, therefore, was properly before the court as a party. It could be heard to argue that a common standard was required to be applied to every bidder, and that the Heights bid was nonconforming because it had a materially different bond attached than that required in the specifications.

We cannot leave this discussion, however, without examining the question of whether Schlumberger's initial bid, in fact, was properly rejected. Although the matter has not been fully briefed, it was argued, and we have assembled the statute, the

Committee Statement accompanying the statute, the general directions for public bidding, and the few cases interpreting *N.J.S.A.* 52:25–24.2. The statute reads:

> No corporation or partnership shall be awarded any contract nor shall any agreement be entered into for the performance of any work or the furnishing of any materials or supplies, the cost of which is to be paid with or out of any public funds, by the State, or any county, municipality or school district, or any subsidiary or agency of the State, or of any county, municipality or school district, or by any authority, board, or commission which exercises governmental functions, unless prior to the receipt of the bid or accompanying the bid, of said corporation or said partnership, there is submitted a statement setting forth the names and addresses of all stockholders in the corporation or partnership who own 10% or more of its stock, of any class or of all individual partners in the partnership who own a 10% or greater interest therein, as the case may be. If one or more such stockholder or partner is itself a corporation or partnership, the stockholders holding 10% or more of the corporation's stock, or the individual partners owning 10% or greater interest in that partnership, as the case may be, shall also be listed. The disclosure shall be continued until names and addresses of every noncorporate stockholder, and individual partner, exceeding the 10% ownership criteria established in this act, has been listed.

The published authorities all relate to bidders with alleged eventual ownership vested in undisclosed individuals having over 10% ownership in the bidding corporation. These cases might well leave an incorrect impression upon the reader, as they apparently did upon the Borough and trial judge in the case before us. In the event of a remand to the Borough, we will clarify these decisions as they might relate to this case.

*N.J.S.A.* 52:25–24.2 applies solely to corporations or partnerships, and requires disclosure of the names of partners or shareholders owning 10% or more of the entity. If the stockholders in turn are corporations or partnerships there must be continued disclosure until all individuals are named who exceed the 10% ownership criterion. The obvious purpose of the statute is to prevent favoritism by denying an individual the use of a corporate or partnership name to hide his or her true identity, when knowledge of this identity could affect public bidding. The public body need not search the State's or County's corporate or partnership records to determine the true parties in interest. The Assembly Municipal Government Committee filed a statement with the bill, enacted as Chapter 33 of

the Laws of 1977, which expresses this purpose. It states, in part:

[T]he committee felt that this additional disclosure would facilitate public oversight of governmental deliberations by providing in one statement information which the public or governmental agency might, otherwise, have to go to considerable time and expense to collect.

While the statement is a prerequisite to the awarding of the contract, the Committee Statement did not require the disclosure to be part of the bidding documents. Rather, "[t]his statement containing the list would have to be submitted with the bid or prior thereto." In fact, included in the statute is a statement that no corporate or partnership bidder should be awarded the contract nor should any agreement be entered into "unless prior to the receipt of the bid or accompanying the bid," the bidder submits a statement containing the names and addresses of all of owners of 10% or more of the stock. *N.J.S.A.* 52:25–24.2.

When the Borough Council determined on advice of counsel that Schlumberger failed to comply with this section, there had been no inquiry into whether Schlumberger had disclosed its 10% or more stockholders, or the lack thereof, to the Borough prior to the bidding. Certifications of Schlumberger's representatives (contained in the brief filed too late for Heights and the Borough to answer properly) at least raise questions of fact concerning this issue. Furthermore, in the case of a public corporation, where the principal disclosure anticipated by the statute relating to any individuals owning over 10% of the corporate stock would have resulted in an answer of "none" or "not applicable," there may even be a consideration of relaxing this requirement if there is an immediate cure and there is no deception concerning the identity of the bidder.

To date, only three cases have interpreted this statute. *See Stano v. Soldo Constr. Co.*, 187 *N.J.Super.* 524, 531, 538–539, 455 *A.*2d 541 (App.Div.1983); *Impac, Inc. v. City of Paterson*, 178 *N.J.Super.* 195, 202–203, 428 *A.*2d 553 (App.Div.1981), *certif. denied*, 87 *N.J.* 414, 434 *A.*2d 1089 (1981); and *George*

*Harms Constr. Co. v. Borough of Lincoln Park,* 161 *N.J.Super.* 367, 371–372, 391 *A.*2d 960 (Law Div.1978). The major point in the *George Harms Constr. Co.* decision was that the statute, then recently enacted, prohibited the award of the contract without a disclosure of the bidder's individual stockholders. Since the disclosure had to be made prior to or accompanying the bid, no cure would be possible once the bids were opened. The judge reasoned that if the bidder was dissatisfied with the bids or determined to avoid the contract, the bidder could refuse to supply the missing statement of its stockholders. The municipality would then be without authority to award the contract, and the bidder would thus have been given an open option to frustrate the bidding procedure. 161 *N.J.Super.* at 377, 391 *A.*2d 960. The court determined that the municipality could not protect itself, since a "statutory imperative" could not be waived. *Ibid.*

In *Impac Inc.,* the defect found to be in violation of *N.J.S.A.* 52:25–24.2 was that the bidder "gave erroneous information of a significant nature," and thus it "substantially departed from the requirements of the city's questionnaire, as well as *N.J.S.A.* 52:25–24.2." 178 *N.J.Super.* at 202–203, 428 *A.*2d 553. This was but one of several problems, and we are given few details.

In *Stano,* the decision in *George Harms Constr. Co.* was limited to cases "where there has been no submission of a proper statement at all." 187 *N.J.Super.* at 539, 455 *A.*2d 541. The trial judge in *Stano* had "found as a matter of fact, although noting that the issue was actually moot, that appellant had provided an accurate shareholders' statement, but due to the complexity of the facts it was unavoidably confusing." *Ibid.* The trial judge had permitted a post-bidding clarification in order "to aid the county in its interpretation of the statement." *Ibid.* This procedure was determined to be permissible.

The aims of public bidding statutes are to guard against favoritism, improvidence, extravagance and corruption; their aim is to secure for the public the benefits of unfettered competition. To achieve these purposes all bidding

practices which are capable of being used to further corrupt ends or which are likely to affect adversely the bidding process are prohibited, and all awards made or contracts entered into where any such practice may have played a part, will be set aside.

*Terminal Constr. Corp. v. Atlantic City Sewerage Auth.*, 67 *N.J.* 403, 410, 341 *A.*2d 327 (1975). The standard between waivable and nonwaivable conditions was also explored in *Terminal Constr. Corp.* as follows:

Essentially this distinction between conditions that may or may not be waived stems from a recognition that there are certain requirements often incorporated in bidding specifications which by their nature may be relinquished without there being any possible frustration of the policies underlying competitive bidding. In sharp contrast, advertised conditions whose waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extravagance, or likely to affect the amount of any bid or to influence any potential bidder to refrain from bidding, or which are capable of affecting the ability of the contracting unit to make bid comparisons, are the kind of conditions which may not under any circumstances be waived.

*Id.* at 412, 341 *A.*2d 327. The Court further stated:

It is firmly established in New Jersey that material conditions contained in bidding specifications may not be waived. This rule, however, does not apply to minor or inconsequential conditions. Public contracting units may resolve problems arising from such conditions in a sensible or practical way.

*Id.* at 411, 341 *A.*2d 327 (citations omitted). *See also Palamar Constr. Inc. v. Tp. of Pennsauken*, 196 *N.J.Super.* 241, 254–257, 482 *A.*2d 174 (App.Div.1983).

In the case before us, what had not been disclosed was that the bidder was a wholly-owned subsidiary of a public corporation having no individual stockholders requiring disclosure under the statute. This fact may even have been well known to the municipality, and, further, its nondisclosure apparently did not affect the bidding process insofar as any claim of favoritism, improvidence, extravagance or corruption (to paraphrase Justice Mountain in *Terminal Constr. Corp.*, 67 *N.J.* at 410, 341 *A.*2d 327). The statute before us serves much the same purpose as the local public contracts law, *N.J.S.A.* 40A:11-1 *et seq.*, and should be interpreted "in a sensible or practical way." 67 *N.J.* at 411, 341 *A.*2d 327.

Since the bidder here was a corporation with the name "Schlumberger" in its title and apparently was known to the municipality as wholly-owned by the public company, should Schlumberger Industries, Inc. have been permitted to state after the bid by way of clarification of the bidding document, that Schlumberger, Ltd. was the sole stockholder? Would this have been more than a "clarification," heretofore recognized as permissible in *Stano?* 187 *N.J.Super.* at 539, 455 *A.*2d 541. No long-term process was necessary to effect a cure, if a defect in fact existed. The bidder immediately attempted to state the necessary facts. Of course, if there had been undisclosed shareholders holding 10% or more of the stock or if the identity of even a public company had been purposely withheld, the bid might properly have been rejected. But since this apparently was not the case here, the contract might also have been awarded. At the very most, there was a factual issue to have been resolved by the Council or the court. We have phrased our comments in indefinite terms, since the Borough Council did not have an opportunity to exercise its discretion in this area.

The statute was not meant to cost public bodies many thousands of dollars by requiring acceptance of higher bids for mere technical violations. This is not a case such as *George Harms Constr. Co.* where the ownership clearly could not be determined from the face of the bid, and had not been previously disclosed to the municipality. Here, there apparently was no need, in the words of the Committee Statement, to "facilitate public oversight of governmental deliberations." Committee Statement, *L.* 1977, *c.* 33. A definitive answer to this question, however, would require a remand to the Borough to reconsider its initial action with a recognition of the limited area of discretion open to it. Then there would no doubt be a new review by the Law Division. We have therefore chosen a hopefully shorter route to resolve the case.

■ As we noted earlier, the trial judge prudently ordered the rebidding of this contract when it appeared that the Borough had held Schlumberger to an exacting standard; had not even examined the Heights bid sufficiently to determine material deviation from the published bonding requirements; and when the bonding defect was noted, had waived this defect without a formal meeting. And this was done even though the Borough would incur considerable additional expense by these actions.

But this rebidding which prejudiced whatever rights Heights may have had was accomplished without notice to Heights or its having an opportunity to be heard. Such a due process violation is prohibited by the mandatory joinder provisions of R. 4:28–1. Under that rule, the trial judge should have ordered that Heights have been made a party, and should have considered its arguments before rendering his decision. This can be accomplished now. Such a reconsideration may save one or more hearings. If the judge determines that there was no basis to reject the Heights bid, the matter should be remanded further to the Borough for a reconsideration of the Schlumberger ownership disclosure issue in accordance with this opinion. If the Heights bid is again rejected by the trial judge, the end result would be the same as if Schlumberger's initial bid had been accepted. The rebidding could stand, and no remand would be necessary for a determination of the Schlumberger ownership issue.

The order directing the rebidding is vacated, and the matter is remanded to the Law Division for immediate reconsideration after argument, which shall be scheduled and concluded within 20 days. The rebidding that has been accomplished and any potential award thereon shall be held in abeyance until the Law Division has ruled and shall thereafter be subject to that decision. Jurisdiction is not retained.