763 A.2d 1272 (2000)
MUIRFIELD CONSTRUCTION CO., INC., Plaintiff-Appellant,
v.
ESSEX COUNTY IMPROVEMENT AUTHORITY and Thomas H. Barham Co., Inc., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued December 20, 2000.
Decided December 27, 2000.
*1273 Robert Hedinger, Florham Park, argued the cause for appellant (Hedinger & Lawless, attorneys; Mr. Hedinger, on the brief).
William E. Frese, Newark, argued the cause for respondent Thomas H. Barham Co., Inc. (Mr. Frese, attorney; John F. Doherty, on the brief).
Thomas P. Scrivo, Morristown, argued the cause for respondent Essex County Improvement Authority (McElroy, Deutsch & Mulvaney, attorneys; Mr. Scrivo, on the brief).
Before Judges BAIME, CARCHMAN and LINTNER.
The opinion of the Court was delivered by CARCHMAN, J.A.D.
In this public contract bidding dispute, plaintiff Muirfield Construction Co., Inc., a plumbing contractor, appeals from the denial of its protest of defendant Essex County Improvement Authority's (ECIA) award of a contract for plumbing and fire protection work at the Support Building for the County Correctional Facility to defendant, Thomas H. Barham Co., Inc. (Barham). Barham submitted a bid including a notarized Disclosure of Ownership form and affidavit attesting that 100% of its stock was owned by PSEG Energy Technologies, Inc. (PSEG). The bid failed to comply with the requirement of N.J.S.A. 45:14C-2(h) which mandates that a licensed master plumber hold at least a 10% interest in an entity performing plumbing work in this State "[i]n order to act as `a plumbing contractor.'"[1] After the bids were opened, ECIA relied upon an uncertified representation from Barham and PSEG's attorney in permitting Barham to "cure" this defect. Following an action by plaintiff in the Law Division, the trial judge concluded that while Barham's bid defect was material and nonwaivable, it was nevertheless curable. He thereafter dismissed the complaint. Plaintiff appeals, and we reverse, concluding that the defect was incurable and that Barham's bid should have been rejected.
The essential facts are not in dispute. On June 12, 2000, both plaintiff and Barham submitted bids for the project. Barham's bid in the amount of $4,299,000 was the low bid, while plaintiff's bid for $4,408,313 was second lowest bid. The bid *1274 documents and specifications required that each bidder submit a notarized statement of disclosure of ownership as follows:
18. Disclosure of Ownership:
The Bid must be accompanied by a notarized statement of disclosure of ownership of the Bidder if a corporation or partnership. The affidavit shall set forth the names and addresses of all shareholders in Bidder corporation who own 10% or more of its stock of any class, or general partners of the partnership who hold a 10% or greater interest therein, as the case may be. If one or more of such stockholders or partners is in itself a corporation or partnership, the stockholder owning 10% or more of that corporation's stock or the individual partner owning 10% or greater interest in that partnership, as the case may be, shall also be listed. The disclosure shall be continued until all names and addresses of every non-incorporated stockholder and individual partner exceeding 10% ownership criteria, pursuant to N.J.S.A. 52:25-24.2 are included. A copy of the required statement is attached as Exhibit III of Section III of these Bid Specifications entitled "Disclosure of Ownership Forms."
To meet that requirement, Barham submitted a statement representing that 100% of its stock was owned by PSEG. The statement was accompanied by an Affidavit of Truthfulness wherein William C. Barham, on behalf of Barham, attested to the accuracy of the bid information.
On June 13, 2000, one day after the bid opening, plaintiff protested the anticipated award to Barham as lowest bidder, asserting that Barham's bid was materially defective because Barham was not a properly licensed "plumbing contractor" as defined by N.J.S.A. 45:14C-2(h).
The protest evoked a rather informal investigatory process by ECIA. On June 16, 2000, ECIA's counsel telephoned William Barham and advised him of the protest. He then advised ECIA that his brother was a licensed master plumber and owned 10% of Barham. Two weeks after the bid opening, ECIA received a letter from Barham and PSEG general counsel, Shawn P. Leyden, asserting that "[i]n actuality, PSEG ... owns 200 shares of Common Stock, approximately 89% of Barham equity, and Thomas B. (Bert) Barham, a licensed plumber, owns 25 shares of Common Series B, which is approximately 11% of Barham equity." Leyden attributed the inaccurate Disclosure of Ownership form as a "scrivening misstatement." Based upon these unsworn statements, ECIA rejected the protest and awarded the contract to Barham. The award was then ratified by the County Executive.
In response to the final ratification, plaintiff filed an action in the Law Division seeking a stay of the execution of the contract, a declaration that Barham was not qualified for the award, and an order awarding the contract to plaintiff as the lowest responsible bidder. The trial judge granted the stay, which has continued to date, and ordered expedited discovery. Curiously, Barham resisted the discovery and filed an application for leave to appeal, which we denied.
The discovery was illuminating. It revealed that Leyden's letter detailing Bert Barham's "equity interest" in Barham was in error. Although Bert Barham owned twenty-five shares of Barham stock, PSEG, in fact, owned 225 shares. Thus, Leyden's reference to "equity" was apparently a misstatement. The discovery also revealed that Barham had submitted a series of other bids which each contained the same "scrivening misstatement" failing to reveal the required 10% interest. More significantly, the discovery established that the closing for PSEG's purchase of Barham took place on December 31, 1999. The closing documents revealed that the Barhams had transferred 100% of their stock to PSEG and did not retain any interest in Barham. Although Bert Barham indicated that a Subscription Agreement was signed and stock certificates were issued contemporaneous with the *1275 closing, neither the "Final Closing Actions" nor "Post-Closing Actions" agendas reflected such a transaction. Moreover, the "Series B" stock had the unique characteristics of being non-transferrable and so otherwise restricted that it was virtually worthless. Finally, Barham's company documents chronology suggested that the Series B stock was issued between May 26, 2000 and July 17, 2000, thus raising a question as to whether the issue occurred after plaintiff's protest was filed on June 13, 2000.
The trial judge accepted plaintiff's argument that the defect was material and could not be waived, but rejected the view that the stock issue was a sham violating the spirit and intent of N.J.S.A. 45:14C-2(h). Ultimately, the judge concluded that the defect was material, but that it had been adequately cured post-bid by Leyden's letter and ECIA's informal investigation:
Now, the question again before the Court is whether or not the plaintiff has proven to the satisfaction of this Court by a preponderance of the evidence that the governmental contracting agency has acted arbitrarily, capriciously or without adequate support in ... the record evidencing arbitrariness on their part in rejecting the bid protest of the Muirfield Construction Company.
And although Muirfield on its face does indeed identify many items which give rise to various inferences, I might say-various suspicions as indicative of either fraud, backdating or other post-bid opening correction material the evidence in the Court's judgment falls short of demonstrating arbitrary or capricious action and falls short of demonstrating that indeed the Barhams did have a ten percent interest in the Barham Company consistent with the statute as of December 31st, 1999, and that said interest continued throughout and at the time of the submission of the bid documents and at the time of their opening; that the series B ... voting shares however nontransferable and however of an apparent nominal value however is not in the Court's opinion inconsistent with the specifications called for on ... this particular project.
Accordingly, for these reasons the Court, in fact, does find that in and by itself the disclosure document and the failure to so indicate the ownership interest of the Barhams may be material and nonwaivable. The Court is satisfied based on the totality of the evidence presented in the record that there was a... good faith cure of the same. That cure negates any inference of fraud, chicanery or rubber stamping on the part of the E.C.I.A. The Court finds that the plaintiff's proofs in that regard fall short of those necessary to show an abuse of the public bidding process.
And in sum, [that] the inadequacy at first appearing to be material has been indeed promptly cured and that the technical deficiency noted on the disclosure document has been corrected by the bidder [to] satisfy the requirements of the statute in its present posture.
We commence our analysis by restating basic principles which apply to the public bidding process. The purpose of the Local Public Contracts Law, N.J.S.A. 40A:11-1 to 50, is to promote competitive bids "`to secure for the public the benefits of unfettered competition.'" Meadowbrook Carting Co., Inc. v. Borough of Island Heights, 138 N.J. 307, 313, 650 A.2d 748 (1994) (quoting Terminal Constr. Corp. v. Atlantic County Sewerage Auth., 67 N.J. 403, 410, 341 A.2d 327 (1975)); Gaglioti Contracting, Inc., v. City of Hoboken, 307 N.J.Super. 421, 431, 704 A.2d 1301 (App.Div.1997). However, a public contract award is not determined simply by the lowest bid, but rather by the lowest bid that "`complies with the substantive and procedural requirements in the bid advertisements and specifications.'" Gaglioti, supra, 307 N.J.Super. at 431, 704 A.2d 1301 (quoting Meadowbrook, supra, 138 N.J. at 313, 650 A.2d 748). Recognizing *1276 that instances arise where bids will be non-conforming, we have previously observed:
The Supreme Court has stressed that "[s]trict compliance [with the Local Public Contracts Law] is required, and a municipality generally is without discretion to accept a defective bid." As a result, all bids must comply with the statute's terms, and "any material departure invalidates a nonconforming bid as well as any contract based upon it." The Court has also acknowledged, however, that "minor or inconsequential discrepancies and technical omissions can be the subject of waiver."

[Gaglioti, supra, 307 N.J.Super. at 432, 704 A.2d 1301 (citations omitted) (quoting Meadowbrook, supra, 138 N.J. at 314, 650 A.2d 748).]
In Meadowbrook Carting Co., Inc. v. Borough of Island Heights, supra, the Supreme Court adopted the two-part test formulated by Judge Pressler in Township of River Vale v. R.J. Longo Construction Co., 127 N.J.Super. 207, 216, 316 A.2d 737 (Law Div.1974), for determining whether a particular noncompliance with bidding requirements is material, and therefore non-waivable:
first, whether the effect of a waiver would be to deprive the municipality of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements, and second, whether it is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.
[138 N.J. at 315, 650 A.2d 748 (citations and internal quotation marks omitted). See also Gaglioti, supra, 307 N.J.Super. at 432, 704 A.2d 1301; In re Protest of the Award of the On-Line Games Prod. & Operation Servs. Contract, Bid No. 95-X-20175, 279 N.J.Super. 566, 596, 653 A.2d 1145 (App.Div.1995).]
The Court determined that the defendant bidder's omission of a required consent of surety to provide a performance bond was a material, non-waivable, and non-curable bid defect despite the defendant borough's election to waive the deficiency upon the defendant bidder's "cure" four days after the bids were opened. Meadowbrook, supra, 138 N.J. at 311 12, 320, 650 A.2d 748. The Court reasoned that permitting waiver of the consent-of-surety requirement would not only "undermine the stability of the public-bidding process" by permitting the non-conforming bidder to unilaterally cancel the award by refusing to cure the deficiency, but would also affect the fairness of the bidding process. Such waiver would also permit the non-conforming bidder to improve its ability to perform over time and by eliminating from consideration other bidders who were deterred by the requirement in the first instance, thereby creating inequality and an opportunity for favoritism. Id. at 321-25, 650 A.2d 748.
Although Meadowbrook dealt specifically with a bidder's failure to meet consent-of-surety requirements, other decisions have addressed the failure to comply with the ownership disclosure provisions at issue here. In George Harms Construction Co., Inc. v. Borough of Lincoln Park, 161 N.J.Super. 367, 391 A.2d 960 (Law Div. 1978), the judge determined that a bidder's purported inadvertent failure to submit a list of all shareholders or partners owning 10% or more of the company in accordance with the mandate of N.J.S.A. 52:25-24.2 was neither waivable nor curable, even though the required list was provided shortly after the opening of bids. The judge noted:
In furtherance of the public policy of open competition on common terms, the courts of New Jersey have consistently held that where an error is deemed material, it cannot be cured after bids are opened, even where, as defendant here asserts, the error results from simple *1277 negligence. Indeed, to permit correction of material deficiencies after bid opening would open the door to fraud and favoritism and defeat the statutory purpose of protection of the public.

[Id. at 376, 391 A.2d 960 (citation omitted).]
The oft-referred to "scrivening mistake" is nothing less than the negligence alluded to in Harms.
In Stano v. Soldo Construction Co., 187 N.J.Super. 524, 531, 539, 455 A.2d 541 (App.Div.1983), we distinguished the incurable bid defect in Harms from a non-defective but "unavoidably confusing" bid disclosure statement which accurately identified the bidder's 100% stockholder but was later merely "clarified" to reflect that one individual owned 70% of the 100% stockholder's corporation. We agreed with the trial judge's assessment that the bidder had indeed provided an accurate shareholder's statement. We concluded that "[t]he later clarification was simply intended to aid the county in its interpretation of the statement and was permissible." Id. at 539, 455 A.2d 541.
Similarly, in Schlumberger Industries, Inc. v. Borough of Avalon, 252 N.J.Super. 202, 211-12, 599 A.2d 589 (App.Div.1991), certif. denied, 130 N.J. 8, 611 A.2d 648 (1992), we recognized that a bidder's later clarification of the commonly-known fact that it was a wholly-owned subsidiary of a large public corporation with no single 10% shareholders did not impact upon the bidding process in a manner implicating the bid award biases that the mandate of N.J.S.A. 52:25-24.2 was intended to preclude. However, we specifically noted that "if there had been undisclosed shareholders holding 10% or more of the stock or if the identity of even a public company had been purposely withheld, the bid might properly have been rejected." Id. at 212, 599 A.2d 589. See also Impac, Inc. v. City of Paterson, 178 N.J.Super. 195, 202-03, 428 A.2d 553 (App.Div.), certif. denied sub nom. Impact, Inc. v. City of Paterson, 87 N.J. 414, 434 A.2d 1089 (1981) (affirming rejection of a bid where the requisite statement of ownership "substantially departed from the requirements of ... N.J.S.A. 52:25-24.2, and gave erroneous information of a significant nature").
The adjuratory duty to disclose the owners of 10% or more of a bidding corporation's stock under N.J.S.A. 52:25-24.2 becomes a significant imperative when considered with the mandate of N.J.S.A . 45:14C-2(h), supra, that a licensed master plumber own at least 10% of a bidding entity's stock in order for the bidder to qualify as a "plumbing contractor" competent to participate in the public bidding process, and that of N.J.S.A. 40A:11-23.2c (prohibiting any subsequent cure of defects in a statement of corporate ownership required by public bid plans and specifications).
The purpose of the licensed master plumber 10% ownership requirement is practical and easily understood-it insures that a person of measurable and demonstrated skill will have not only an interest in, but also some control over both the contractor and the public project. The master plumber's licensing requirement, in addition to insuring the bidder's requisite skill level and knowledge of applicable codes and regulations, see N.J.S.A. 45:14C-2(a), also guarantees that the bidder's licensee is exposed to appropriate sanctions by the licensing agency in the event of violations or improper actions in performing a public contract. In sum, the 10% owner requirement guarantees a bidder's skill, professional, and pecuniary interests to a degree sufficient to insure that the public will benefit from a licensed master plumber's oversight of the project. The legislative endorsement of the statutory 10% ownership provision dispels any notion that this requirement is immaterial or waivable. For a further discussion of this statutory scheme, see In re Public Service Gas & Electric Co., 325 N.J.Super. 477, 739 A.2d 991 (App.Div.1999).
*1278 The trial judge here determined that the defect in Barham's bid was material and non-waivable. We agree with that conclusion, which disposes of the first prong of the River Vale test, supra.
In determining whether the 10% disclosure requirement is curable, we must apply the second prong of the test to determine whether the bidding defect was "of such a nature that its waiver would adversely affect competitive bidding by placing ... [Barham] in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition." River Vale, supra, 127 N.J.Super. at 216, 316 A.2d 737. While we recognize that the second prong speaks explicitly only of waiver, we apply the same standard to the issue of cure, in conformity with Meadowbrook, supra, 138 N.J. at 320-25, 650 A.2d 748, Harms, supra, 161 N.J.Super. at 373-78, 391 A.2d 960, Gaglioti, supra, 307 N.J.Super. at 432-35, 704 A.2d 1301, Stano, supra, 187 N.J.Super. at 535-38, 455 A.2d 541, and Schlumberger, supra, 252 N.J.Super. at 209-11, 599 A.2d 589.
In Harms, supra, the judge noted:
[i]f, after opening of the bids, [defendant, the non-conforming lowest bidder] had decided, for whatever reason (e.g., a change in its business conditions or an unreasonably low bid price), that it did not want the award, it could have refused to forward the stockholder statement. At that point the borough would have no choice but to reject [defendant's] bid. Therefore, the borough was deprived of its assurance that the contract would be entered into, performed and guaranteed according to its specific requirements and the mandate of the Legislature. Furthermore, [defendant] was placed in a position of advantage over the other bidders, which only serves to undermine the necessary common standard of competition. Had other bidders known in advance that they could avoid timely filing of the disclosure statement or that it would be waived by the borough, one may speculate the possibility of another and lower bid. As pointed out in Case v. Trenton, 76 N.J.L. 696, 700, 74 A. 672 (E. & A.1909), "the presence of the condition may have deterred others from bidding, who would have bid had they known that these conditions would be waived."

[161 N.J.Super. at 377, 391 A.2d 960.]
The observation is particularly relevant here. If Barham had chosen for any reason not to proceed with the process after the bids were opened, it need not have forwarded any additional information about the asserted stock transaction, and thus, had the apparent option of simply abandoning its bid. That opportunity, whether real or imagined, was sufficient to give Barham an advantage over conforming bidders. Although no such analysis was undertaken by the Law Division here, we are satisfied that Barham's failure to provide a timely and accurate disclosure of ownership violates the second prong of River Vale. Accordingly, Barham's bid should have been rejected on that basis alone.
The inability to cure the defective bid here is supported by an important distinction from Stano and Schlumberger. In those cases, the challenged bids were facially valid, with no apparent defects. Both bidders had submitted adequate and accurate disclosure forms which were supplemented to reveal additional facts. Here, Barham submitted a bid and disclosure form which, on its face, was defective and disqualified the bid and the bidder. Although it purported to reveal ownership, Barham's disclosure form failed to comply with the plumbing contractor ownership requirements of N.J.S.A. 45:14C-2(h). This circumstance is analogous to Harms, Meadowbrook, and Gaglioti, as the bid could not have been accepted in the first instance.
Moreover, we perceive an additional reason for concluding that Barham's bid should have been rejected. We need not *1279 address the merits of plaintiff's allegations that Barham's records were produced after the fact, that highly restricted stock of questionable value was issued post-bid to satisfy the bidding requirements, or that Barham submitted similar bids containing the same ownership disclosure statement that PSEG was Barham's sole stockholder. Both the public interest and the public's perception that the bidding process is fair, competitive and trustworthy are critical components and objectives of our public bidding statutes. When dealing with a carefully structured regulatory scheme which requires not only disclosure of ownership interests but a licensee with an significant stake in the bidding entity, the public must be assured that information is accurate and truthful when sworn to and cannot be subject to modification after the fact to meet a bidding requirement that all other responsible bidders met in the first instance. We recognize that on occasion this may prove to be a hardship to an otherwise responsible bidder who negligently failed to comply with a requirement such as this, but on balance the public interest is best served by strict scrutiny of the ownership disclosure provision, which, in simple terms, must be complied with correctly the first time. As Justice Stein aptly observed in Meadowbrook:
[w]e recognize that to prohibit the waiver of ... [a] requirement occasionally may result in additional cost to the public, but we have no doubt that the overriding interest in insuring the integrity of the bidding process is more important than the isolated savings at stake. If an exception were made, its effect would be to encourage bidders not to ... [comply with requirements], a result contrary to the purpose of the Local Public Contracts Law.

[138 N.J. at 325, 650 A.2d 748.]
We agree with the trial judge's finding that Barham's failure to disclose Bert Barham's asserted 10% interest was a material bid defect; however, we disagree that the defect was curable. Accordingly, we reverse and remand for the entry of judgment declaring Barham ineligible and unqualified for the contract award and awarding the contract to the lowest responsible bidder, plaintiff.
NOTES
[1] N.J.S.A. 45:14C-2 defines a plumbing contractor as follows:

(h) "Plumbing contractor" means any licensed master plumber, firm, partnership, corporation or other legal entity which undertakes or offers to undertake for another the planning, laying out, supervising, installing or making of additions, alterations and repairs in the installation of plumbing. In order to act as "a plumbing contractor," a licensed master plumber shall be the holder of not less than 10% of the issued and outstanding shares of stock in the corporation, or not less than 10% of the capital of the partnership, or not less than 10% of the ownership of any other firm or legal entity engaging in the business of plumbing contracting in the State and shall employ either journeymen plumbers or apprentice plumbers or both.
[N.J.S.A. 45:14C-2(h) (emphasis added).]